CHARLOTTE LEQUATTE *et al.*

*v.*

STUART R. DRURY *et al.*

*Filed at Ottawa November 10, 1881.*

1. CHANCERY—*laches*—*when a bar to relief.* Equity will not assist a party who has not been reasonably diligent in asserting his rights. Stale claims will not be encouraged, since by the lapse of time there must of necessity be great difficulty in arriving at the exact facts of the case; and this rule will be applied as a bar to relief sought against a trustee.

2. On a bill for the partition of land in which the complainants claimed an equitable title, and that the defendant held the legal title in trust for them, which bill was not filed until thirteen years after the defendant obtained his deed, under which he had ever since claimed the land against all others, the defendant in his answer set up the *laches* and delay of the complainants as a defence: *Held,* that the *laches,* unexplained, was such as to constitute a bar to the relief sought.

3. ERROR WILL NOT ALWAYS REVERSE—*exclusion of evidence.* The exclusion of the testimony of a defendant, when called by the complainants to prove facts occurring before the death of a common ancestor under whom both parties claim, if error, is no ground for the reversal of a decree dismissing the bill, where the *laches* of the complainants has been such as to bar any claim to relief.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. SWEENEY, JACKSON & WALKER, for the plaintiffs in error:

The court erred in excluding the testimony of Eli and Silas Drury, two of the defendants, when called by the complainant. Stuart R. Drury, by his answer, did not claim title as an heir or devisee of Isaiah Drury, but claimed the lands were conveyed to him with the consent of Isaiah Drury in his lifetime. His defence was, that he was a *bona fide* owner, independent of all questions of heirship.

The objection to the competency of the witnesses was based on sec. 2, chap. 51, Rev. Stat. 1874. This section is intended to apply to cases where the guardian, heir, etc., is a party to the suit in a representative capacity, and has no application to a case like this. *Bivens et al.* v. *Harper*, 59 Ill. 19; *Branger et al.* v. *Lucy*, 82 id. 91; *Fischer* v. *Fischer*, 54 id. 231; *Pigg et al.* v. *Carroll et al.* 89 id. 206.

Messrs. OSBORN & CURTIS, for the defendants in error:

The complainants not being able to recover in any event, owing to their *laches* and the staleness of their demand, this court will not reverse for a possible error in the exclusion of evidence, as it could not have done the complainants any harm.

The *laches* of the complainants is such as to form a bar to any equitable relief. Story's Eq. Jur. sec. 1520; *Rogers* v. *Simmons*, 55 Ill. 76; *Carpenter* v. *Carpenter*, 70 id. 457; *Hough* v. *Coughlan*, 41 id. 133; *Thompson* v. *Bruen*, 46 id. 125; *Alexander* v. *Hoffman*, 70 id. 114; *Brink* v. *Steadman*, id. 241; *Walker* v. *Douglas*, id. 446; *Roby* v. *Cassitt*, 78 id. 639; *McLaurie* v. *Barnes*, 72 id. 73; *Iglehart* v. *Vail*, 73 id. 63; *Fitch* v. *Williams*, id. 92; *Hedenburg* v. *Jones*, id. 49; *Cox* v. *Montgomery*, 36 id. 396; *Hall* v. *Fullerton*, 69 id. 448; *Dempster* v. *West*, id. 613; *Beach* v. *Shaw*, 57 id. 25.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was to have partition made among the several heirs, of the lands of which it is alleged Isaiah and Priscilla Drury were either the legal or equitable owners at the time of their death.   Only as to a portion of the lands described in the bill is there any contention in this court, and as to them the bill was dismissed in the circuit court, and as to the residue a decree of partition was rendered by the court on the hearing.   To the latter part of the decree no objection is made.

As respects the lands concerning which the bill was dismissed, complainants insist Isaiah Drury, at the time of his death, was the equitable owner.   The legal title had been or was in Eli Drury, in trust, as it is alleged, for Isaiah Drury.   It seems Eli Drury and Stuart R. Drury, or one of them, were indebted to one Andrews, since deceased, and to secure that indebtedness Eli Drury conveyed these lands to him.   That indebtedness was afterwards discharged.   Anticipating that his death might soon occur, Andrews desired to reconvey these lands, and accordingly he deeded the same to Stuart R. Drury, without the consent of Eli Drury, as is charged in the bill.   This conveyance by Andrews to Stuart R. Drury was made in 1858, and since the death of Isaiah Drury, which occurred in 1854.   Since that time Stuart R. Drury has held the legal title to these lands, under the deed from Andrews, claiming to be the owner, in opposition to all the other heirs of Isaiah Drury.   The bill proceeds on the theory, although the legal title is in Stuart R. Drury, equitably these lands belong to the estate of Isaiah Drury, and partition should be made of them among his heirs at law.

The answer of Stuart R. Drury to the bill is under oath, and in it he denies that Isaiah Drury was the owner of these lands, or that the legal title to them was ever in Eli Drury in trust for him, as charged in the bill, but insists the legal

title was in Eli Drury in trust for respondent, and then explains how and for what purpose the lands were conveyed to Andrews, and then reconveyed to him. It is distinctly alleged in the answer of defendant, that Isaiah Drury, in his lifetime, knew of the conveyance of the premises to Andrews, and never claimed any interest in them after they had been redeemed from a certain sale by defendant.

Some questions of minor importance have been pressed on the attention of the court, but it is not deemed necessary to remark upon them, as it is thought best to place the decision on matters more nearly affecting the merits of the cause.

On the trial of the cause before the court, complainants offered as witnesses in their behalf, Eli and Silas Drury, two of defendants, who are heirs at law of Isaiah Drury, to prove facts in relation to the creation of a trust in these lands, and other facts occurring prior to the death of the common ancestor, as set forth in the bill. To the admission of the testimony of the witnesses offered, defendant Stuart R. Drury objected, on the ground the witnesses were parties to the suit, and heirs of the common ancestor, and therefore directly interested adversely to defendant interposing the objection, and who defends as heir at law of Isaiah Drury; which objection was by the court sustained. That decision is the only error insisted upon in the argument as a ground for the reversal of the decree of the circuit court.

It may be conceded, that under the decision of this court in *Pigg* v. *Carroll,* 89 Ill. 206, the witnesses called on behalf of complainants to testify concerning facts alleged in the bill as having occurred prior to the death of the common ancestor, were entirely competent for that purpose. Exactly what complainants wished to prove by the witnesses is not definitely stated. Assuming, however, the material facts alleged in the bill as having happened before the death of the common ancestor would be established by their evidence, still it

is apparent no harm was in fact done complainants by the exclusion of the testimony, for the reason they have been guilty of such *laches* in asserting the rights they now claim that no decree could pass in their favor. Whatever rights complainants may have had in these particular lands came to them on the death of Isaiah Drury, in 1854, and certainly as early as 1858, when Andrews reconveyed the premises to Stuart R. Drury.

The bill in this case was not filed until April, 1871. A period of seventeen years since the death of the ancestor, and of thirteen years since defendant obtained a deed for the premises, under which he has claimed the title as against all others, was suffered to elapse before complainants undertook to assert any claim to any portion of the premises. The *laches* of complainants is distinctly insisted upon in the answer of defendant as a bar to any relief. The record, however, is absolutely barren of any evidence that even tends to explain or excuse the unusual delay that has intervened before asserting the rights complainants now claim in the premises. It is not shown complainants were ignorant of the situation of the property at the time of the death of the ancestor, and at the time of the making of the deed by Andrews to defendant. In the absence of proof to the contrary it must be assumed they were familiar with the transactions concerning these lands as they occurred, and if they were, they ought to have asserted the claim they now put forth at a time when the facts were fresh in the minds of the parties, and susceptible of satisfactory proof. Equity will not assist a party who has not been reasonably diligent in asserting those rights concerning which its aid is invoked. It is for this reason stale claims will not be encouraged, since by the lapse of time there must, of necessity, be great difficulty experienced in ascertaining the exact facts as to the matter in controversy.

The doctrine of what the law calls *laches,* has been applied to cases of trust.    2 Story's Eq. Jur. sec. 1520 a. Unreasonable delay, unexplained on the part of one asking equitable relief, has been held to be a bar to the relief sought, even against a trustee, in cases in this court.    *Rogers* v. *Simmons,* 55 Ill. 76 ; *Carpenter* v. *Carpenter,* 70 id. 457.    The case at bar comes within the principle of the cases *supra,* and the decree of the circuit court must be affirmed.

*Decree affirmed.*